# EXHIBIT 1

1032-2018-2209

FILED
10-03-2018
John Barrett
Clerk of Circuit Court
2018CV008224
Honorable William
Sosnay-08
Branch 08

STATE OF WISCONSIN, CIRCUIT COURT, MILWAUKEE COUNTY

ANDRE J. SMITH, 1200 E. Capitol Drive, Suite 360, Milwaukee, WI 53211,

    Plaintiff,

vs.

THE CITY OF MILWAUKEE, 200 E. Wells Street, Room 205, Milwaukee, WI 53202, ERIK MALDONADO, 2920 N. 4th Street, Milwaukee, WI 53212, AND HECTOR SOSA, 2920 N. 4th Street, Milwaukee, WI 53212,

    Defendants.

Case No.:
Case Code No.: 30301

Amount Claimed is Greater than $10,000.00

## SUMMONS

THE STATE OF WISCONSIN, To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 45 days of receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is

Milwaukee County Clerk of Circuit Courts
901 N. 9th Street
Room 104
Milwaukee, Wisconsin 53233

and to Michael G. Soukup, Plaintiff's attorney, whose address is

Michael G. Soukup
Pinix & Soukup, LLC
1200 East Capitol Drive, Suite 360
Milwaukee, Wisconsin 53211

You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 3rd day of October, 2018.

PINIX & SOUKUP, LLC
Attorneys for Plaintiff, Andre Smith

<u>Electronically signed by Michael G. Soukup</u>
Matthew S. Pinix, SBN 1064368
Michael G. Soukup, SBN 1089707
1200 East Capitol Drive, Suite 360
Milwaukee, Wisconsin 53211
T: 414.963.6164
F: 414.967.9169
michael@pinixsoukup.com
www.pinixsoukup.com

FILED
10-03-2018
John Barrett
Clerk of Circuit Court
2018CV008224
Honorable William
Sosnay-08
Branch 08

STATE OF WISCONSIN, CIRCUIT COURT, MILWAUKEE COUNTY

ANDRE J. SMITH,

       Plaintiff,

vs.

THE CITY OF MILWAUKEE, ERIK MALDONADO,
AND HECTOR SOSA,

       Defendants.

Case No.:
Case Code No.: 30301

Amount Claimed is
Greater than $10,000.00

# COMPLAINT

## INTRODUCTION

1. The following causes of action arise from an illegal seizure and subsequent search of Andre Smith by two Milwaukee Police Department patrol officers. Due to the illegal seizure, Smith was taken into custody and remained there until it was shown at a motion to suppress evidence that the actions of the officers violated Smith's constitutional rights.

2. In addition, the illegal actions of the officers were foreseeably caused by the policies, customs, and/or practices of the City of Milwaukee, which has demonstrated a deliberate indifference to the rights of people in Smith's position.

3. Smith seeks compensatory and punitive damages in amounts deemed just by the Court.

## NATURE OF ACTION

4.　This is a civil action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, brought to redress the injuries inflicted on the Plaintiff when Defendants Erik Maldonado and Hector Sosa illegally seized and searched Plaintiff.

5.　Additionally, this is a civil action under the common-law doctrine of false imprisonment, as defined in *Maniaci v. Marquette*, 50 Wis. 2d 287, 184 N.W.2d 168 (1971), brought to redress the injuries inflicted on the Plaintiff by the Defendants when Defendants Erik Maldonado and Hector Sosa illegally seized and searched Plaintiff, which led directly to confining Plaintiff, and the Plaintiff was harmed by said confinement.

6.　Additionally, this is a civil action under the common-law doctrine of battery, as defined by *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 173 N.W.2d 148 (1970), brought to redress the harm to Plaintiff by Defendant Erik Maldonado when, based on an illegal seizure, he grabbed Plaintiff, handcuffed Plaintiff, and searched Plaintiff.

7.　Additionally, this is a civil action against the City of Milwaukee, under *Monell v. Dep't of Soc. Services of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), for the practices, policies, and customs, that created the circumstances leading to the violation of Plaintiff's constitutional rights.

## JURISDICTION AND VENUE

A.   **Jurisdiction**

8.   This Court has jurisdiction over this action by virtue of its general jurisdiction over civil cases. *Terry v. Kolski*, 78 Wis. 2d 475, 254 N.W.2d 704 (1977).

B.   **Venue**

9.   Milwaukee County is the proper venue for this action because Milwaukee County is a place where one or more of the Defendants reside or does substantial business, within the meaning of Wis. Stat. § 801.50(2)(c).

## PARTIES

A.   **Plaintiff**

10.   Plaintiff Andre J. Smith is a 33-year old African-American man and life-long resident of Milwaukee.

B.   **Defendants**

11.   Defendant Erik Maldonado is a resident of the State of Wisconsin and at all times relevant to the allegations against him in this action, was employed by Milwaukee as a Milwaukee Police Department ("MPD") officer and was acting under color of law and carrying out his duties as an officer.

12.   Defendant Hector Sosa is a resident of the State of Wisconsin and at all times relevant to the allegations against him in this action, was employed by Milwaukee as a MPD officer and was acting under color of law and carrying out his duties as an officer.

-3-

13. Defendant the City of Milwaukee ("Milwaukee") at all times material hereto, was a municipal corporation, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at City Hall, 200 East Wells Street, City of Milwaukee, State of Wisconsin, 53202.

## ALLEGATIONS OF FACT

**A.  Facts relating to first, second, and third causes of action**

14. In the early morning hours of January 1, 2018, Defendants Erik Maldonado and Hector Sosa went to the vicinity of 1605 West Cornell Street in the City of Milwaukee in response to a gunshot detection.

15. About four blocks away from the shot detection, Maldonado and Sosa observed an individual, later identified as Plaintiff Andre Smith, walking southbound in the alley in the 4300 block of North 14th Street and North 15th Street.

16. Maldonado asked Smith if he heard gunshots, and Smith said no. Maldonado also asked Smith if he was armed, and Smith said no. Maldonado thanked him for his cooperation and let Smith go.

17. Neither Maldonado nor Sosa observed any gun, bulge, or anything suspicious about Smith.

18. Nonetheless, Maldonado continued to observe Smith as Smith walked down the alleyway.

19. Maldonado claimed to observe Smith conduct "several security checks with his right hand."

-4-

20. Maldonado would explain later that a security check is when an individual consciously or subconsciously taps or adjusts a weapon when around law enforcement.

21. Maldonado decided to stop Smith again.

22. Maldonado and Sosa drove up to Smith.

23. As the car got close, Maldonado noticed that Smith turned his body and in his opinion, Smith was "blading."

24. Maldonado had received training about characteristics of armed persons, including "blading." Maldonado would explain later that blading is when a person turns the side of his or body that has a weapon away from another person who may be observing that person.

25. As the car stopped and Maldonado got out, Smith stopped and put his hands up right away.

26. Maldonado ordered Smith to stop and to be honest whether he had a gun or not. Smith replied "yes."

27. With Smith's hands up, Sosa observed a gun in Smith's jeans pocket.

28. Maldonado grabbed Smith, put Smith's hands behind his back, handcuffed Smith, and began going through Smith's pockets.

29. Sosa took the gun from Smith.

30. Maldonado subsequently learned that Smith was a felon.

31. Maldonado and Sosa arrested Smith for, and Smith was subsequently charged with, possession of a firearm by a felon.

-5-

32. Smith was brought to District 5 for processing and then placed in jail.

33. On January 4, 2018, the Milwaukee County District Attorney's Office filed a criminal complaint, case number 18-CF-65, based on Officer Erik Maldonado's statements that Andre Smith was found to have possessed a firearm after he was observed conducting "several security checks with his right hand and bladed his body from officers."

34. On January 6, 2018, an initial appearance was held, and the court found probable cause to hold Defendant for further proceedings based on the criminal complaint.

35. On January 12, 2018, a preliminary hearing was held, and after Officer Maldonado testified, the judge found that there was probable cause to hold Smith over for trial.

36. Smith's defense counsel filed a motion to suppress the evidence taken from Smith because the officers seized and searched Smith illegally, and a hearing on the motion was held on March 9, 2018.

37. Maldonado and Sosa testified at the hearing, and their body camera footage was also played.

38. Contrary to the claim in Maldonado's report that he could see Smith conduct several security checks with his right hand, Maldonado admitted that Smith's back was to him.

39. In addition, while Maldonado reported that Smith turned clockwise away from the officers, Maldonado was forced to admit at the hearing that the video showed that Smith turned counter-clockwise or towards the officers' car.

40. Based on the testimony and the video footage the judge made the following findings:

  a. The video footage from the officer's body cameras showed no suspicious movements whatsoever.

  b. Maldonado could not have seen Smith tap the front of his pockets, and that such a claim was "absurd" and "impossible."

  c. Smith's movement when the car approached was not suspicious because he turned in a manner that "anybody would do" and was "natural."

  d. The officers' lacked any objective and articulable suspicion to justify the seizure, and instead, they seized Smith on nothing more than a hunch that Smith was lying.

41. The judge granted the motion to suppress.

42. The State moved to dismiss the case, which the judge granted along with an order to release Smith from custody.

43. On March 9, 2018, 67 days after Officers Maldonado and Sosa illegally arrested him, Smith was released.

### B. Facts relating to fourth cause of action

44. In 2008, the MPD ushered in a "broken windows policing" strategy involving "proactive policing," which directed officers to increase the number of traffic and pedestrian stops, even though the Chief of the MPD at the time Edward Flynn, acknowledged that such a strategy would necessarily involve stopping "lots of innocent people."

45. Not surprisingly, over the last decade, the number of MPD traffic and pedestrian stops has multiplied dramatically. According to the MPD's own 2015 Annual Report, MPD officers conducted 149,604 traffic stops and 46,830 subject (pedestrian) stops in 2015, compared to 52,399 traffic stops and 14,258 subject stops in 2007. These figures may even underrepresent the extent to which Milwaukee's high-volume, suspicionless stop-and-frisk program has increased police stops in Milwaukee because MPD officers fail to document every traffic and pedestrian stop conducted.

46. Data shows that the large increase in stops has had a discriminatory impact on Black and Latino people. In 2011, a report by the Milwaukee Journal Sentinel analyzed data provided by the MPD to the Wisconsin Office of Justice Assistance on MPD traffic stops conducted from January 2011 to April 2011. The report indicated that Black drivers throughout Milwaukee were seven times more likely to be stopped by MPD officers than white drivers, and that Hispanic drivers were five times more likely to be stopped than white drivers. The report also indicated that Black drivers were twice as likely as white drivers to have their cars searched after the initiation of a stop,

-8-

even though the rate at which searches resulted in the seizure of contraband was comparable for Black and white drivers.

47. As part of its "broken windows policing" strategy, Milwaukee engaged in practices that pressured MPD officers to conduct suspicionless stops by using productivity measures related to the number of stops and by sanctioning officers who failed to meet formal or informal stop quotas.

48. The number of stops conducted by each officer, squad, and unit are tracked and evaluated at weekly Compstat meetings. Compstat is short for "computer statistics."

49. According to a 2013 report of the U.S. Department of Justice's Bureau of Justice Assistance and the Police Executive Research Forum, these regular MPD meetings involve a comparison of "individual officer activity (including . . . traffic and subject stops) with districtwide and agency-wide activity. This information is available during the Compstat meetings and on the agency's intranet, where all officers can view it." In regard to this, then Chief of the MPD Flynn stated, "I want officers to know that the chief is seeing their name, whether they're doing well or need to improve their performance."

50. Where Compstat meetings and performance metrics make clear that officer productivity is measured in part by the number of stops conducted, rather than by ensuring that all stops and frisks are legally supported, MPD officers have a strong incentive to stop Milwaukee residents for whom there is no objective and articulable reasonable suspicion of criminal activity. It sends patrol officers the clear message that

-9-

the quantity of stops matters more than whether the encounters are supported by reasonable suspicion and are not motivated by race or ethnicity.

51. Not surprisingly, Milwaukee's policy, practice, and custom of pressuring MPD patrol officers to conduct increased stops has solidified into an implicit and/or explicit quota system, and in their effort to satisfy these productivity standards, MPD officers across the Department routinely conduct suspicionless stops and frisks.

52. Based on information from the MPD's Tiburon Records Management System, which includes data on traffic pedestrian stops, from 2010 to 2012 at least 42% of stops in Milwaukee lacked any identified reason that could plausibly show that an MPD officer had individualized, objective, and articulable suspicion of criminal activity to justify the stop.

53. Based on information from the MPD's Traffic and Criminal Software module ("TraCS"), at least 8% of stops in Milwaukee lacked information that would plausibly demonstrate that an MPD officer had individualized, objective, and articulable suspicion of any criminal activity prior to making the stop.

54. In addition, Milwaukee has failed to properly train and supervise MPD officers, including supervisors, concerning adequate documentation of the bases for stops and frisks in a manner that permits supervisors to ensure that stops are supported by reasonable suspicion of criminal activity and not motivated by race or ethnicity.

55. From the year 2000 through June 2013, MPD Standard Operating Procedure 710 on Field Interview/Traffic Warning Cards required MPD officers to document field interviews and minor traffic violations that did not lead to arrest on a

Field Interview/Traffic Warning Card, but did not require officers to document individualized, objective, and articulable reasonable suspicion of criminal activity supporting a stop on the Card or explain that such documentation would permit supervisory review for compliance with constitutional requirements.

56. MPD Standard Operating Procedure 085 on Citizen Contacts, Field Interviews, and Search and Seizure has been in force since 2013, and has been revised twice. SOP 085 has required, and continues to require, that MPD officers document information about field interviews that do not result in a citation or arrest in the Tiburon Field Interview Module. But SOP 085 has not instructed officers who conduct stops to document sufficient information to demonstrate that the stop was supported by individualized, objective, and articulable reasonable suspicion of criminal activity so as to permit supervisory review for compliance with the Fourth Amendment.

57. Clearly, at the time that Smith was stopped in January 2018, Milwaukee was on notice that MPD officers were engaging in unlawful stops and frisks.

58. Milwaukee, without admitting fault, recently settled a case that was filed on February 22, 2017. The case, *Collins, et al. v. City of Milwaukee, et al.* Case No. 17-CV-0234-JPS, alleged that Milwaukee had engaged in stop and frisk policies, practices, and customs that: (1) caused officers to stop people without individualized, objective, and articulable suspicion of criminal conduct; (2) authorized officers to frisk people without individualized, objective, and articulable suspicion that the person was armed and dangerous; and (3) sustained stops and frisks of Black and Latino people that involved

-11-

racial and ethnic profiling, or were otherwise motivated by race and ethnicity, rather than reasonable suspicion.

59. Milwaukee did not admit to the allegations in *Collins*, but as part of the settlement, Milwaukee agreed to ensure that all stops, including field interviews, are conducted in accordance with the constitutional rights of all people.

### FIRST CAUSE OF ACTION (Illegal Seizure and Search)

60. For a first cause of action, against Defendants Erik Maldonado and Hector Sosa in their individual capacities, Plaintiff Andre Smith re-alleges and incorporates by reference as if fully set forth herein the allegations in paragraphs preceding paragraphs 1 through 43.

61. The Fourth Amendment of the United States Constitution, as guaranteed by the Fourteenth Amendment, protects the people from unreasonable searches and seizures by the government. As such, it prohibits police from subjecting a person to a stop in the absence of individualized, objective, and articulable suspicion of criminal activity. The Fourth Amendment also prohibits police from subjecting a person to a frisk in the absence of individualized, objective, and articulable suspicion to believe that the person is armed and dangerous.

62. When Maldonado and Sosa ordered Smith to stop a second time, Smith was seized by Maldonado and Sosa although Maldonado and Sosa lacked any objectively reasonable suspicion.

63. Maldonado and Sosa, while under the color of state law and in the course and scope of their employment, acted willfully and wantonly, maliciously, and with a

conscious disregard and deliberate indifference to Smith's rights by illegally seizing and then searching him.

### SECOND CAUSE OF ACTION (False Imprisonment)

64. For a second cause of action, against Defendants Erik Maldonado and Hector Sosa in their individual capacities, Plaintiff Smith re-alleges and incorporates by reference as if fully set forth herein the allegations in preceding paragraphs 1 through 43.

65. Maldonado and Sosa, while acting under the color of state law and in the course and scope of their employment, intended to confine Smith and did so by arresting him, although they had no lawful authority to do so because they lacked any objectively reasonable suspicion to detain Smith.

66. Further, Maldonado failed to accurately convey facts in his reports that directly resulted Smith's continued imprisonment by asserting that Smith conducted "several security checks with his right hand," which a judge later concluded was "absurd" and "impossible."

67. Further, Maldonado failed to accurately convey facts in his reports that directly resulted in Smith's continued imprisonment by asserting that he had reasonable suspicion because Smith "bladed," or turned in a suspicious manner, but it was shown at the hearing to be an inaccurate assertion and the judge found that Smith turned in manner that "anybody would do."

68. Smith was clearly harmed by the confinement, which involved 67 days in jail.

### THIRD CAUSE OF ACTION (Battery)

69.     For a third cause of action, against Defendant Erik Maldonado and Hector Sosa in their individual capacities, Plaintiff Smith re-alleges and incorporates by reference as if fully set forth herein the allegations preceding paragraphs the allegations in preceding paragraphs 1 through 43.

70.     Maldonado battered Smith when he intentionally contacted Smith without Smith's permission following his illegal seizure by grabbing Smith, handcuffing Smith, and then rifling through his personal belongings.

### FOURTH CAUSE OF ACTION (*Monell* Claim)

71.     For a fourth cause of action, against Defendant Milwaukee, Plaintiff Smith re-alleges and incorporates by reference as if fully set forth herein the allegations preceding paragraphs the allegations in preceding paragraphs 1 through 59.

72.     The constitutional violations against Smith were caused by the policies, customs, and/or practices of Milwaukee, which has demonstrated a deliberate indifference to the rights of people in Smith's position.

73.     The policies, customs, and/or practices of Milwaukee authorized and encouraged MPD patrol officers, like Maldonado and Sosa, to escalate field interviews into seizures that are unsupported by reasonable suspicion of criminal activity.

74.     In addition, Milwaukee's failure to adequately train and supervise its officers to conduct stops that are supported by individualized, objective, and articulable suspicion of criminal activity is a direct and proximate cause of the MPD's rampant unconstitutional stops, including the one imposed upon Smith.

75. Milwaukee's failure to adequately train and supervise also shows its reckless and deliberate indifference to the constitutional rights of those who come in contact with the MPD, like Smith.

## DAMAGES

76. By virtue of the Defendants' unlawful actions alleged above, Plaintiff has sustained out-of-pocket expenses, physical, mental and emotional distress, and lost wages, for all of which he seeks compensatory and punitive damages in amounts deemed just by the Court.

## CONDITIONS PRECEDENT

77. All conditions precedent to this lawsuit within the meaning of Wis. Stat. § 802.03(3) have been performed or have otherwise occurred.

## DEMAND FOR JURY TRIAL

78. Plaintiff demands a trial by jury of six (6), pursuant to Wis. Stat. § 805.01(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment awarding the Plaintiff compensatory and punitive damages in the amounts deemed just by the Court, make-whole equitable relief, and the reasonable costs and expenses of this action including a reasonable attorney's fees, as well as such other and further relief as may be just.

Dated this 3rd day of October, 2018.

        PINIX & SOUKUP, LLC
        Attorneys for Plaintiff, Andre Smith

        <u>Electronically signed by Michael G. Soukup</u>
        Matthew S. Pinix, SBN 1064368
        Michael G. Soukup, SBN 1089707
        1200 East Capitol Drive, Suite 360
        Milwaukee, Wisconsin 53211
        T: 414.963.6164
        F: 414.967.9169
        michael@pinixsoukup.com
        www.pinixsoukup.com