# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANDRE J. SMITH,**

    Plaintiff,

    v.                                                                              Case No. 18-CV-1797

**CITY OF MILWAUKEE, ERIK V. MALDONADO,
and HECTOR SOSA,**

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

        In the early morning hours of January 1, 2018, Milwaukee Police Officers Erik V. Maldonado and Hector Sosa seized and subsequently searched Andre J. Smith. Smith was charged in Milwaukee County Circuit Court with being a felon in possession of a firearm. After the state court granted Smith's motion to suppress evidence, the state voluntarily dismissed the criminal case. Smith now sues the City of Milwaukee and Officers Maldonado and Sosa under 42 U.S.C. § 1983 for the allegedly illegal search and seizure and brings a claim under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) for the City's allegedly improper practices, polices, and customs that led to the alleged constitutional violation. Smith also sues under common-law false imprisonment and battery.

        Smith moves for partial summary judgment as to his § 1983 claim that the defendants violated his Fourth Amendment rights. For the reasons explained below, the plaintiff's motion for partial summary judgment is denied.

# FACTS

During the early morning hours of January 1, 2018, Officers Maldonado and Sosa of the Milwaukee Police Department went to the vicinity of 1605 West Cornell Street in the City of Milwaukee. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶¶ 1–3, Docket # 17 and Defs.' Response to PPFOF ("Defs.' Resp.") ¶¶ 1–3, Docket # 26.) The officers were responding to three gunshots detected by a system known as "ShotSpotter." (*Id.* ¶ 4.) About four blocks away from the location of the detected shots, the officers observed Smith walking southbound in the alley in the 4300 block of North 14th Street and North 15th Street. (*Id.* ¶ 5.) The officers spoke to Smith, during which time Smith informed the officers that he did not hear any gunshots and that he did not have a gun. (PPFOF ¶¶ 6–7 and Defs.' Resp. ¶¶ 6–7.) Neither officer observed a gun, bulge, or anything suspicious about Smith at this time. (*Id.*) After speaking to Smith, Officer Maldonado thanked Smith for his cooperation and Smith continued on his way down the alley. (*Id.* ¶ 8.)

After this initial encounter, Officer Maldonado continued to watch Smith walking down the alley. (*Id.* ¶ 9.) Officer Maldonado wrote in his police report that as Smith walked away, he observed Smith conduct several "security checks" with his right hand. (*Id.* ¶ 10.) Officer Maldonado understood a "security check" to be when an individual consciously or subconsciously taps or adjusts a weapon around law enforcement. (*Id.* ¶ 11.) Officer Maldonado wrote in his police report that because of the security checks and the proximity to the gunshot detection, the officers exited their squad car to talk to Smith. (*Id.* ¶ 12.) Officer Maldonado further wrote in his police report that as they approached Smith, he "turned clockwise, keeping the right side of his body away from us (bladed)." (*Id.* ¶ 13.)

Officer Maldonado understood "blading" to be when a person turns the side of his body that may have a weapon on it away from the person observing him. (*Id.* ¶ 14.)

Officer Maldonado wrote in his report that due to his knowledge of the area as "high crime," Smith's proximity to the gunshot detection, and Smith's "security checks" and "blading," he asked Smith to put his hands up when they reached him. (*Id.* ¶ 15.) When Smith put his hands up, Officer Sosa observed a firearm in Smith's right front pocket, which Sosa recovered. (*Id.* ¶ 16.) Subsequent to recovering the firearm, the officers learned that Smith was a felon. (*Id.* ¶ 17.) The officers brought Smith to District 5 for the offense of possession of a firearm by a felon. (*Id.* ¶ 18.)

On January 4, 2018, the Milwaukee County District Attorney's Office filed a criminal complaint against Smith which became Case No. 18-CF-65. (*Id.* ¶ 19.) The criminal complaint relied on Officer Maldonado's statements that Smith was found to have possessed a firearm after he was observed conducting security checks and blading. (*Id.* ¶ 20.) On January 12, 2018, the court conducted a preliminary hearing where Officer Maldonado testified that he observed Smith conduct several security checks and blade his body. (*Id.* ¶ 21.) At the end of the preliminary hearing, the judge found that there was probable cause to hold Smith over for trial. (*Id.* ¶ 22.)

Smith filed a motion to suppress the evidence taken from him on the grounds that the officers seized and searched Smith illegally. (*Id.* ¶ 23.) A hearing was held on March 9, 2018 before Milwaukee County Circuit Court Judge Dennis Cimpl. (*Id.* ¶ 24.) Officer Maldonado testified that after the first encounter with Smith, he continued to watch Smith and observed Smith conduct "security checks with his right hand." (*Id.* ¶ 25.) Officer Maldonado agreed, however, that Smith's back was to the officers when he watched Smith

walk away and thus he could not actually see Smith's hand. (*Id.* ¶ 26.) Officer Maldonado then testified that what he saw was Smith's elbow move while walking in the alley. (*Id.* ¶ 27.) Officer Sosa testified that while Smith was walking away, he saw "[s]mall movement with the right hand" that was "very minimal." (*Id.* ¶ 28.) Officer Sosa agreed, however, that because Smith's back was towards him, it was his arm, not his hand, that he saw move. (*Id.* ¶ 29.)

The officers wore body cameras during the encounter; however, Officer Maldonado avers that he did not turn his camera on until after he was already out of the car. (Declaration of Erik Maldonado ("Maldonado Decl.") ¶ 18, Docket # 23.) Thus, he states that his body camera did not capture the security checks. (*Id.*) Neither does Officer Sosa's body camera show Smith's elbow moving, security checks, or other furtive movement. (PPFOF ¶ 31.) Further, after viewing the body camera footage, Officer Maldonado agreed that Smith actually turned counterclockwise, towards the officers, contrary to what he wrote in his police report. (*Id.* ¶ 35.) Officer Maldonado still maintained, however, that Smith turned in a suspicious manner. (*Id.* ¶ 36.)

At the end of the hearing, Judge Cimpl determined that the officers' body camera footage showed no suspicious movements and that Smith's movement when the car approached (i.e., turning towards the officers) was not suspicious but was what "anybody would do" and was "natural." (*Id.* ¶ 39.) Judge Cimpl determined that the officers seized Smith on nothing more than a hunch and granted Smith's motion to suppress evidence. (*Id.* ¶¶ 39–40.) After the hearing, the state moved to dismiss the case, which the judge allowed. (*Id.* ¶ 41.)

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Serv., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)). In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

I must also view the evidence presented through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at 254. Where, as here, the party moving for summary judgment also bears the burden of persuasion at trial (e.g., because the movant is the plaintiff), the movant must establish each and every essential element of his claim. *See McKinney v. Am. River Transp. Co.*, 954 F. Supp. 2d 799, 803 (S.D. Ill. 2013) (citing *Celotex*,

477 U.S. at 32); *see also Lewis v. Kordus*, No. 09-CV-138, 2010 WL 3700020, at *1 (E.D. Wis. Sept. 14, 2010) ("[W]here the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party."). This differs from the usual summary judgment motion filed by a defendant (who does not bear the ultimate burden of persuasion at trial), who can prevail just by showing an absence of evidence to support any essential element of the non-movant's case. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

**ANALYSIS**

Smith moves for summary judgment as to his § 1983 claim that the defendants violated his Fourth Amendment rights when they seized him without reasonable suspicion on two grounds. First, Smith argues that he is entitled to summary judgment because of issue preclusion. Second, he argues that the undisputed facts in this case show as a matter of law that the defendants seized him without reasonable suspicion. I will address each argument in turn.

*1. Issue Preclusion*

Smith argues that he is entitled to summary judgment in his favor because Judge Cimpl's grant of his motion to suppress entitles him to issue preclusion. (Pl.'s Br. at 10–16, Docket # 16.) The Seventh Circuit has held that "[t]he effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790–91 (7th Cir. 2004) (citing 28 U.S.C. § 1738). Thus, Wisconsin law governs this issue. *See id.* In Wisconsin, "[o]ffensive collateral estoppel occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously

litigated unsuccessfully in an action with another party." *Michelle T. v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327, 328 n.1 (1993). Offensive collateral estoppel also can be used against a defendant who, although not a party to the earlier litigation, has legal interests aligned with those of a previous party. *See Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 594 N.W.2d 370, 377–78 (1999).

Smith argues that the interests of the defendant officers and the City of Milwaukee in this § 1983 action are aligned to those of the State of Wisconsin in Smith's criminal case. To be in privity, the parties must be "so closely aligned that they represent the same legal interest." *Paige K.B.*, 226 Wis. 2d at 226, 594 N.W.2d 370 (internal quotation and citation omitted). "A litigant has a sufficient identity of interest with a party to a prior proceeding if the litigant's interests in the prior case can be deemed to have been litigated." *Id.* The court addressed the issue of privity in a similar context in *Cannaday v. Sandoval*, No. 09-C-811, 2011 WL 13187024, at *1 (E.D. Wis. July 26, 2011), *aff'd*, 458 F. App'x 563 (7th Cir. 2012). In *Cannaday*, several officers conducted a traffic stop and arrested Cannaday on an outstanding warrant. After he was searched, over six grams of cocaine were recovered from his pockets. The officers subsequently obtained a warrant to search Cannaday's residence. Cannaday was charged with possession with intent to deliver cocaine. Cannaday moved to suppress the evidence seized from his home on the grounds the officers lacked probable cause to enter the residence because the amount of cocaine found on his person did not necessarily indicate the plaintiff was running a drug operation out of his residence. The court granted Cannaday's motion. The state subsequently dismissed the criminal charges after the motion to suppress was granted.

Cannaday then filed a § 1983 action against the officers alleging that his Fourth Amendment rights were violated. He argued that the Milwaukee County Circuit Court's decision to grant his motion to suppress had a preclusive effect in his federal civil action. The court disagreed, stating:

> [I]t is questionable whether there is sufficient privity of interest between the State of Wisconsin in prosecuting drug dealing and the interests of the Defendant police officers in defending against an attack on their professionalism. Indeed, as the defendants point out, prosecutors exercise independent discretion in pursuing cases.

*Cannaday*, 2011 WL 13187024, at *3 (internal quotations and citations omitted). The Seventh Circuit affirmed the district court's ruling in an unpublished decision. In so doing, the court concluded that the defendant officers' interests were not aligned with the State of Wisconsin because "the prosecutors in the criminal proceeding had no interest in the potential civil liability of the police officers." *Cannaday*, 458 F. App'x at 566.

Smith argues *Cannaday* is of little value because it is an unpublished decision and because the court also concluded that the officers were likely acting in good faith given that they had acted on a warrant. (Pl.'s Reply Br. at 6–7, Docket # 24.) I disagree. Even as an unpublished decision, the Seventh Circuit's finding has strong persuasive value. And while the *Cannaday* court did address alternative arguments, such as the fact the officers were likely acting in good faith because they sought a warrant, this does not alter the fact that the court first determined that the interests of the state and the police officers were not aligned. *Cannaday*, 458 F. App'x at 566. While Smith argues that the differences between the City of Milwaukee and the State of Wisconsin's interests are merely "technical," (Pl.'s Br. at 13) this is a vast understatement. While Officers Maldonado and Sosa both testified during the state suppression hearing, they were testifying as witnesses for the state in the state's attempt

to protect the evidence it wished to admit in criminally prosecuting Smith. The state had no interest in defending the officers against any potential civil liability stemming from their actions in obtaining the evidence. Thus, I cannot say that the interest of the defendants in this case was so closely aligned with the State of Wisconsin in Smith's criminal action to conclude that the officers or the City effectively had their interests already litigated in the criminal action. Without sufficient privity between the parties, issue preclusion does not support Smith's motion for summary judgment.

2. *Reasonable Suspicion*

2.1 Applicable Legal Standards

In order to succeed on a claim under § 1983, a plaintiff must show that (1) the defendants deprived him of a federal constitutional right, and (2) the defendants acted under color of state law. *Brown v. City of Milwaukee*, 288 F. Supp. 2d 962, 969 (E.D. Wis. 2003). As the party with the ultimate burden of proof at trial, Smith can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the defendants. *See Lewis*, 2010 WL 3700020, at *1. Here, the parties do not dispute that the defendants were acting under color of state law. Thus, the only issue before me is whether Smith was deprived of a right secured by the Constitution. Smith alleges that the defendants violated his rights under the Fourth Amendment by seizing him without reasonable suspicion.

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. An investigatory stop not amounting to an arrest is authorized if the officer is able to point to "specific and articulable facts" that give rise to a reasonable suspicion that a crime is about to be or has been committed. *Terry v. Ohio*, 392

U.S. 1, 21–22 (1968). "Reasonable suspicion" must be based on some "objective manifestation" that the suspect is involved in criminal activity. *United States v. Wimbush*, 337 F.3d 947, 949 (7th Cir. 2003). Although the police may not detain a suspect based merely on a hunch, the likelihood of criminal activity need not rise to the level required for probable cause to arrest and falls well short of meeting the preponderance of the evidence standard. *Id*. In evaluating the reasonableness of a stop, courts must examine the totality of the circumstances known to the officer at the time of the stop. *United States v. Jackson*, 300 F.3d 740, 745–46 (7th Cir. 2002).

### 2.2 Application to this Case

Smith argues that the undisputed facts show, as a matter of law, that the defendants seized him without reasonable suspicion. The defendants argue that the officers had reasonable suspicion to stop Smith because they observed him conduct several "security checks," observed him "blading" his body, and observed him walking in a "high crime" area near in time and location to where the ShotSpotter detected the gunshots. (Defs.' Br. at 2–3, 6–7, Docket # 20.)

Smith argues that while Officers Maldonado and Sosa both testified that they observed Smith conduct several security checks and Officer Maldonado testified that Smith was "blading" his body away from the officers, the officers' body camera footage definitively shows that these observations are untrue. (Pl.'s Br. at 8–9.) Smith further argues that Officer Maldonado's observations regarding Smith "blading" his body were not objectively suspicious because Smith naturally turned towards the officers' vehicle as it approached him on his left. (*Id.* at 4.) Finally, Smith argues that both officers acknowledged

they could not actually see Smith's hand, so, at most, they saw elbow movement, which is objectively not suspicious. (Pl.'s Reply Br. at 2–3.)

In evaluating the reasonableness of a *Terry* stop, a reasonable jury must consider the totality of the circumstances, which includes such factors as the experience of law enforcement, the behavior and characteristics of the suspect, and whether the location of the stop is in a "high crime area." *Jackson*, 300 F.3d at 746. In this case, there is a genuine dispute as to at least one material fact that precludes granting summary judgment in Smith's favor. Officer Maldonado testified that while Smith was walking down the alley, with his back to the officers, he observed Smith take his right hand out of his pocket and tap the pocket twice. (Declaration of Michael Soukup ¶ 8, Ex. F, Transcript of Hearing on Motion to Suppress ("Hearing Tr.") at 18, Docket # 18-4.) Officer Maldonado further testified that while from his vantage point he could not actually see Smith's hand; he observed the movement of Smith's arm and elbow. (Tr. 18–19.) Officer Sosa also testified that he observed some movement of Smith's right hand. (Tr. 46.)

Smith counters that the officers' body camera footage does not show the alleged "security checks" (Pl.'s Reply Br. at 3). However, both officers testified that they did not turn on their body cameras until *after* they allegedly saw the security checks (Tr. at 19, 21, 43–44, 46–47). Thus, the video footage would not show the security checks the officers testified they observed. Accordingly, a material factual dispute exists as to what the officers observed and whether what they observed would constitute reasonable suspicion in light of the totality of the circumstances. This determination wholly turns on the credibility of the officers which cannot be resolved on summary judgment. Credibility determinations are the

province of the jury, not a judge on summary judgment. *Payne v. Milwaukee Cty.*, 146 F.3d 430, 432 (7th Cir. 1998).

Smith further argues that there is no dispute of fact that Officer Maldonado did not see Smith's hand, and without seeing the hand, Officer Maldonado's observation of Smith's moving elbow as Smith walked away was not objectively suspicious. (Pl.'s Reply Br. at 2–3.) In other words, Smith argues a mere elbow movement as a matter of law does not constitute reasonable suspicion. Smith frames the issue too narrowly. While the elbow movement, in and of itself, is not suspicious, a rational jury must determine reasonable suspicion on the totality of the circumstances. Thus, a jury will be needed to decide both (1) whether the officers' testimonies are credible, and (2) if credible, whether under the totality of the circumstances what they observed amounted to reasonable suspicion to stop Smith.

## CONCLUSION

Smith moves for partial summary judgment as to his § 1983 claim that the defendants violated his Fourth Amendment rights. Smith argues that the prior state court decision granting a motion to suppress evidence has a preclusive effect in this case. Alternatively, Smith argues that the undisputed facts in this case warrant summary judgment in his favor. I do not find that the defendants are precluded from presenting their defense because of the earlier state court decision. Further, the existence of a genuine dispute of material fact regarding reasonable suspicion, which turns on the officers' credibility, forecloses summary judgment. For these reasons, Smith's motion for partial summary judgment is denied.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for partial summary judgment (Docket # 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk of court's office will contact the parties to set a status conference regarding further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 7th day of February, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge